MHN

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES ex rel.<br>LAVONDELL NOBLE,<br><br>Petitioner,<br><br>v.<br><br>LEONTA JACKSON, Warden,<br>Western Illinois Correctional Center,<br><br>Respondent. | )<br>)<br>)<br>) No. 10 C 3142<br>)<br>) Judge Ruben Castillo<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

In November 2004, LaVondell Noble ("Noble") was convicted of aggravated kidnaping, aggravated unlawful restraint, and unlawful use of a weapon by a felon. (R. 13, State Ct. R., Ex. N at Q140-43.) He is currently serving concurrent twelve and four year sentences as a result of those convictions. (*Id.* at C59.) Presently before the Court is Noble's *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Section 2254"). For the reasons stated below, Noble's petition for writ of habeas corpus is denied.

## RELEVANT FACTS[1]

Noble's 2004 convictions stem from his involvement in the kidnaping of Jose Rojas

---

[1] In reviewing a petition for habeas corpus relief pursuant to Section 2254, a court must presume that state court factual determinations are correct. 28 U.S.C. § 2254(e)(1). This presumption can be overcome where the petitioner rebuts those facts by clear and convincing evidence. *Id.* The following summary of relevant facts is therefore properly derived from the state court opinions issued by Illinois courts and is supplemented where appropriate by the appellate record submitted to the Court pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. *See Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002); *accord Rever v. Acevedo*, 590 F.3d 533, 537 (7th Cir. 2010) (holding that although a federal court's review is limited to the last decision to address the arguments on the merits, its deference to factual findings in state court is not so limited).

("Rojas"). (*Id.*, Ex. D at 1.) The facts established at his bench trial reveal that at about 3:00 p.m. on July 15, 2003, several men approached Rojas at a public car wash in Chicago and stated that they intended to rob him. (*Id.*) When Rojas told these men to take his vehicle, they instructed him to "get the F in the back of the car." (*Id.*) These men said they were aware that Rojas' father had recently received a sum of money, and they told Rojas that they were going to hold him for a ransom. (*Id.* at 1-2.) The assailants drove Rojas back to a lit garage and detained him for almost fifteen hours. (*Id.* at 2.) During this time, Noble and a second man beat Rojas; Noble also handcuffed Rojas to his car. (*Id.*)

In the early morning of July 16, 2003, at approximately 5:00 a.m., Rojas was able to free himself from the handcuffs, and immediately escaped from the garage. (*Id.*) He then flagged down a police squadrol and reported the crime to the police. (*Id.*) The two officers Rojas encountered became suspicious because Rojas was frantic and had a broken handcuff hanging from his wrist. (*Id.*) Rojas then took the officers back to the garage where he was held throughout the night. (*Id.*) Several individuals were arrested at the scene and taken to the police station for identification. (*Id.*)

That same day, Rojas viewed a lineup and provided a positive identification of two of his kidnapers and a third man, Marvin Everette, who was also present in the garage when Rojas was being detained. (*Id.* at 2-3.) Rojas also informed the police that three other men who were involved in his kidnaping were missing from the lineup; notably, Noble was not in this lineup. (*Id.*) The victim also described one of the missing accomplices as being a larger, bald-headed African-American male with a tattoo of the "letter J, a heart, and a P" on his leg. (*Id.*) The police, through the questioning of Marvin Everette, then identified Noble as a possible suspect.

2

(*Id.*) As a result of this identification, the police placed Noble's photograph in an array of six photographs. (*Id.*) From this photographic array, Rojas identified Noble as one of his kidnapers. (*Id.*) Like the physical lineup, the photographic identification also occurred on the same day Rojas escaped from his kidnapers. (*Id.* at 2-3.)

Two months later, the police called Rojas, told him they had Noble in custody, and asked Rojas to stop by the police station to identify him. (*Id.* at 3.) Rojas subsequently went to the police station, viewed a lineup, and positively identified Noble as one of the kidnapers. (*Id.*)

At Noble's bench trial, Rojas provided a positive identification of Noble in open court. (*Id.*) He also testified that Noble was the person who sat in the back seat of his vehicle while the kidnapers transported him from the car wash to the garage. (*Id.*) According to Rojas, Noble held a firearm against his stomach during this drive. (*Id.*) While in the garage, Rojas claims that Noble struck him on his cheek several times. (*Id.*) Rojas also testified that he was able to observe Noble for a period of approximately nine hours at a distance of four feet in the lit garage. (*Id.*)

Noble was charged with five counts: (1) aggravated kidnaping for the purpose of obtaining ransom; (2) aggravated kidnaping while armed with a dangerous weapon; (3) aggravated battery; (4) aggravated unlawful restraint; and (5) unlawful use of a weapon by a felon. (*Id.*, Ex. D at 1.) After the state rested its case, Noble moved for a directed finding, which the trial judge granted only as to the aggravated battery charge. (*Id.*, Ex. N at Q116, Q131-32.) The trial judge found Noble guilty on the remaining four charges. (*Id.* at Q140-43.)

At sentencing, the trial judge merged the guilty finding from count 2 into count 1. (*Id.* at S56.) He also stated that he "would merge the finding of guilty of unlawful use of a weapon by a

3

felon, count 5 [,] into count 4 [,] aggravated unlawful use of a weapon." (*Id.*) The trial judge then proceeded to sentence Noble to twelve years on count 1. (*Id.* at S57.) He also imposed a concurrent sentence of four years for the "charge of aggravated unlawful use of a weapon." (*Id.*)

On direct appeal, Noble, proceeding *pro se*, presented several arguments to challenge his convictions. First, Noble argued that he was not proven guilty beyond a reasonable doubt because the state failed to prove essential elements of its case. (*Id.*, Ex. A at 10-22.) Second, he contended that he received ineffective assistance of counsel at trial. (*Id.* at 23.) Finally, he appears to have argued that the identification procedures used in his case violated the Due Process clause. (*Id.* at 28-30.) On September 5, 2007, the Illinois Appellate Court, First Judicial District, rejected these arguments and affirmed the trial court's judgment. (*Id.*, Ex. D at 16.) Noble did not seek to appeal this decision to the Illinois Supreme Court. (*See* R. 1, Pet. at 2.)

In May 2008, Noble filed a *pro se* petition for state postconviction relief. (*Id.*, Ex. E at 1.) The sole argument made by Noble in his state postconviction petition was ineffective assistance of counsel at trial. (*See id.* at 1-6.) On July 15, 2008, Noble's petition was denied by the state trial court. (*Id.*, Ex. F at 1.) In its ruling, the state trial court found that all the issues raised by Noble were either barred by *res judicata*, waived, or were contradicted by the record. (*See id.* at 3-9.)

The following month, Noble, through counsel, filed a motion asking the trial court to reconsider its disposition of his postconviction petition. (*Id.* at C53.) According to Noble, reconsideration was warranted based on additional affidavits he had obtained which, he argued, established that his trial counsel provided ineffective assistance by failing to call certain witnesses to support his mistaken identity trial theory. (*Id.* at C53-56.) On September 18, 2008,

4

the state trial court denied his motion for reconsideration. (*Id.*, Ex. G at 4.) In doing so, it deemed the affidavits submitted by Noble "insufficient as a matter of law" and, alternatively, found that there was a "scant likelihood" that the testimony of these witnesses "would have proved significant." (*Id.* at 3.)

The denial of his postconviction petition was appealed to the Illinois Appellate Court, First Judicial District ("state appellate court"). On appeal, Noble argued that the trial court erred by: (1) rejecting the affidavits; (2) finding that the testimony of the additional witnesses would not have made a difference in the outcome of Noble's trial; and (3) ruling that the original petition was barred on *res judicata* and waiver grounds. (*Id.*, Ex. H at 8-15.) In concluding his arguments, Noble also contended that "his conviction for aggravated unlawful use of a weapon must be overturned because the conviction was for an offense which [he] was not charged with committing." (*Id.* at 16.)

In December 2009, the state appellate court affirmed the denial of Noble's postconviction petition. (*Id.*, Ex. K at 8.) First, it affirmed the state trial court's *res judicata* and waiver holdings. (*Id.* at 6-7.) Next, it rejected Noble's ineffective assistance of counsel claim based on his trial counsel's failure to call certain witnesses. (*Id.* at 7.) According to the state appellate court, trial counsel's decision to not call these witnesses was a matter of trial strategy, and thus insufficient to support an ineffective assistance of counsel claim. (*Id.*) Given this conclusion, it refrained from addressing Noble's arguments regarding the trial court's ruling on the affidavits he submitted. (*Id.*) Additionally, the state appellate court was unpersuaded by Noble's final argument, and specifically ruled as follows:

> Finally, the [Noble] asserts that he was convicted of an offense with which he was not

charged, aggravated unlawful use of a weapon. It is true that in pronouncing [Noble's] sentence, the trial court erroneously stated that [he] had been convicted of this offense. But the mittimus correctly states that [Noble] was convicted of aggravated unlawful restraint, the offense with which he was charged. The four-year prison term which [he] received was within the permissive statutory range of two to five years for that offense. 720 ILCS 5/10-3.1(A) (West 2006). Accordingly we find no reason for reversal based on this contention.

(*Id.* at 8.)

On February 8, 2010, Noble filed a petition for leave to appeal before the Illinois Supreme Court. (R. 13, State Ct. R., Ex. L.) His petition was denied on April 28, 2010. (*Id.*, Ex. M.)

## PROCEDURAL HISTORY

Noble filed his *pro se* petition for habeas corpus on May 14, 2010. (R. 1, Pet.) He subsequently amended his petition by adding two additional exhibits on July 6, 2010. (R. 11, Am. Pet.) In his petition, Noble argues that his rights under the Sixth and Fourteenth Amendments were violated by the trial judge stating that he was sentencing Noble based on a conviction for aggravated unlawful use of a weapon, when, in fact, Noble had actually been convicted of aggravated unlawful restraint. (*See* R. 1, Pet. at 8-9.) This error, he contends, prejudiced him and denied him his "right to an appropriate direct appeal." (*Id.*)

## LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), habeas relief may be granted only when a state court decision is "contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Etherly v. Davis*, 619 F.3d 654, 660 (7th Cir. 2010). The statutory phrase "clearly established Federal law as determined by the Supreme Court of the United States," is a critical limitation under Section 2254(d)(1) and refers to "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state court decision." *Washington v. Smith*, 219 F.3d 620, 627 (7th Cir. 2000) (quoting *Terry Williams v. John Taylor*, 529 U.S. 362, 412 (2000)).

"A decision is 'contrary to' federal law when the state court applied a rule that 'contradicts the governing law' set forth by the Supreme Court or if the state court reached a different outcome based on facts 'materially indistinguishable' from those previously before the Supreme Court." *Etherly*, 619 F.3d at 660 (quoting *Williams*, 529 U.S. at 405-06). On the other hand, "[a] state court unreasonably applies federal law if it identifies the correct legal principle but unreasonably applies it to the facts of the case, or if it unreasonably refuses to extend a principle to a context in which it should apply." *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010) (citing *Williams*, 529 U.S. at 407).

To succeed on a claim predicated on Section 2254(d)'s "unreasonable application" clause, a petitioner must show that the state court's application of federal law was both incorrect and unreasonable. *Toliver v. McCaughtry*, 539 F.3d 766, 775 (7th Cir. 2008) (quoting *Raygoza v. Hulick*, 474 F.3d 958, 963 (7th Cir. 2007)). "A state court's decision is 'unreasonable' within the meaning of § 2254(d)(1) only if it is 'so erroneous as to be objectively unreasonable' and 'well outside the boundaries of permissible differences of opinion.'" *Bennett v. Gaetz*, 592 F.3d

7

786, 790 (7th Cir. 2010) (quoting *Emerson v. Shaw*, 575 F.3d 680, 684 (7th Cir. 2009)). Additionally, a state court decision may be considered unreasonable where it is in "tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary" as to be unreasonable. *Badelle v. Correll*, 452 F.3d 648, 655 (7th Cir. 2006) (internal quotation marks and citation omitted). Put simply, "a state court's decision 'minimally consistent with the facts and circumstances of the case' is not unreasonable[.]" *Conner v. McBride*, 375 F.3d 643, 649 (7th Cir. 2004) (quoting *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997)).

As a general matter, under post-AEDPA habeas law, federal courts defer to a great extent to the decisions of state courts, and review those decisions for reasonableness only. *Ben-Yisrayl v. Buss*, 540 F.3d 542, 546 (7th Cir. 2008). This deference, however, "does not imply abandonment or abdication of judicial review." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## ANALYSIS

### I. Federal constitutional claim

Respondent asks the Court to refrain from reviewing Noble's petition under the concurrent sentence doctrine. (R. 12, Answer.) The Court need not consider this seldom-used discretionary doctrine as Noble's federal constitutional claim is clearly procedurally defaulted.[2]

### A. Procedural default

---

[2] The concurrent sentence doctrine is a discretionary bar to judicial review. *Cheeks v. Gaetz*, 571 F.3d 680, 689 (7th Cir. 2009). Under the concurrent sentence doctrine, courts may decline to review a conviction carrying a concurrent sentence when one concurrent conviction has been found valid. *See id.* The proper exercise of this discretionary doctrine depends on the degree of prejudice that may be attributed to the challenged conviction. *Id.* (citing *Cramer v. Fahner*, 683 F.2d 1376 (7th Cir. 1982)).

The procedural default doctrine will normally preclude a federal court from reaching the merits of a habeas claim when that claim was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state-law procedural grounds. *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004) (citations omitted). "A petitioner fairly presents his federal claim to the state courts when he articulates both the operative facts and the controlling legal principles on which his claim is based. He need not cite book and verse on the federal constitution. But he must, in some manner, alert the state courts to the federal underpinnings of his claim." *Id.* at 519-20 (internal quotation marks and citations omitted). In deciding whether the state courts were so alerted, courts look to a number of factors, including: "(1) whether the petitioner relied on federal cases that engage in constitutional analysis; (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation." *Id.*

In this case, it is evident that Noble did not present his claim that he was denied an "appropriate direct appeal" in state court. (*See* R. 13, State Ct. R., Ex. H at 8-16.) Unsurprisingly, he therefore did not rely on federal or state cases which engage in a federal constitutional analysis to support this claim. Additionally, Noble did not present any arguments in state court that would call to mind the specific constitutional right he now argues was violated. (*Id.*) While his undeveloped contention on state postconviction review stating that his "conviction for aggravated unlawful use of a weapon must be overturned because the conviction was for an offense which [he] was not charged with committing,"(*id.* at 16), could be read as a

9

due process argument,[3] it fails for one simple reason: Noble was clearly not convicted of aggravated unlawful use of a weapon. (*See* R. 13, State Ct. R., Ex. N at C59, Q131-32, Q140-43.) Indeed, Noble himself admits that he was convicted of aggravated kidnaping and aggravated unlawful restraint. (*See* R. 1, Pet. at 8 ("I was charged and tried in the County of Cook, for Aggravated Kidnapping and Aggravated Unlawful Restraint. I was found guilty of those offenses.").) Finally, the pattern of facts he alleges are not well within the mainstream of constitutional litigation. (*See id.*) Thus, because Noble did not alert the state courts of the federal constitutional nature of his claim, the Court finds that Noble did not fairly present it to a state court.

When a petitioner has failed to fairly present to the state courts the claim on which he seeks relief in federal court and the opportunity to raise that claim in state court has passed, the petitioner has procedurally defaulted that claim. *Perruquet*, 390 F.3d at 514. Here, Noble has already presented various claims on both direct review and postconviction proceedings. He therefore no longer has any available state procedure to adjudicate the federal constitutional claim he presents in his petition. *See, e.g., id.* (finding that petitioner who pursued both direct and postconviction review "no longer [had] any state corrective process available to him"). As a result, his opportunity to raise this claim in state court has passed. Accordingly, the Court finds

---

[3] The Sixth Amendment, which is applied to the states through the Due Process clause of the Fourteenth Amendment, "guarantees a criminal defendant the fundamental right to be informed of the nature and cause of the charges made against him so as to permit adequate preparation of a defense." *Kaczmarek v. Rednour*, No. 09-2417, 2010 WL 4628671, at *8 (7th Cir. Nov. 17, 2010) (citations omitted). Had Noble been convicted of a crime for which he was not charged, his constitutional rights would have certainly been implicated. As described above, no such thing occurred in this case.

10

that Noble's claim is procedurally defaulted.[4]

B. **Cause and prejudice**

The procedural default doctrine does not impose an absolute bar to federal relief. "It provides only a strong prudential reason, grounded in considerations of comity and concerns for the orderly administration of justice, not to pass upon a defaulted constitutional claim presented for federal habeas review." *Perruquet*, 390 F.3d at 514 (internal quotation marks and citations omitted). This doctrine is therefore subject to equitable exceptions. *Id.* "A procedural default will bar a federal court from granting relief on a habeas claim unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or, alternatively, he convinces the court that a miscarriage of justice would result if his claim were not entertained on the merits." *Id.* (citations omitted).

To establish cause for his default, a petitioner ordinarily must show that some external impediment blocked him from asserting his federal claim in state court. *Id.* "To establish prejudice, he 'must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* (quoting *United States v. Frady*, 456 U.S. 152 (1982)). "If the petitioner cannot show cause and prejudice but instead

---

[4] At various points in his submissions to the Court, Noble implicitly suggests that his procedural due process rights were violated because he was allegedly convicted of a charge–aggravated unlawful use of a weapon–for which he was not charged. (*See, e.g.*, R. 14, Reply at 10.) Indeed, Noble is correct in noting that "[n]o principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." *Cole v. State of Ark.*, 333 U.S. 196, 207 (1948). This principle, however, is of no value to Noble as he was not convicted of aggravated unlawful use of a weapon. (*See* R. 13, State Ct. R., Ex. N at C59, Q131-32, Q140-43.)

11

seeks to overcome his procedural default by establishing the prospect of a miscarriage of justice, then he must demonstrate that he is actually innocent of the crime for which he was convicted–that is, he must convince the court that no reasonable juror would have found him guilty but for the error(s) allegedly committed by the state court." *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327-29 (1995)).

Noble does not present cause for his failure to raise his federal constitutional claim to a state court. While Noble argues that the cause for his failure is the trial judge's misstatement at sentencing regarding his convictions, (R. 14, Reply at 7), the Court finds that this mistake cannot serve as both the basis for his federal constitutional claim and his excuse for failing to raise his claim before a state court. In short, Noble has not established cause for the procedural default of his federal constitutional claim; nor does he overcome his procedural default by establishing the prospect of a miscarriage of justice. These conclusions leave the Court unable to review the merits of Noble's federal constitutional claims.

As a final matter, the Court notes that Noble's claim asserting that the state trial judge's misstatement denied him his "right to an appropriate direct appeal" is unsupported by the record. According to Noble, this misstatement denied him his right to a direct appeal because it caused him to appeal an aggravated unlawful use of a weapon charge that was not part of his indictment. (*See* R. 1, Pet. at 9.) This apparent confusion, he contends, prevented him from properly appealing his aggravated unlawful restraint conviction. (*See id.*) The Court finds that while the trial judge's statement at sentencing mentioning an aggravated unlawful use of a weapon charge was mistaken, it did not undermine Noble's ability to appeal his convictions. Indeed, prior to being relieved of their duties, the state appellate defenders, despite the state trial judge's

12

misstatement at sentencing, drafted a brief challenged Noble's unlawful restraint conviction. (*See* R. 13, State Ct. R., Ex. A, App. A at 10.) In spite of the trial judge's misstatement at sentencing, the record available to Noble after his trial clearly sets forth his charges and convictions. He therefore had the information necessary to proceed with an appeal of his convictions. Put simply, Noble's right to appeal his convictions was not denied by the trial judge's misstatement.

## II. Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Noble a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in this order.

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition; instead, he must first request a certificate of appealability. *See Miller-El*, 537 U.S. at 335. A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Evans v. Circuit Court of Cook Cnty., Ill.*, 569 F.3d 665, 667 (7th Cir. 2009). Under this standard, Noble must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). In cases where a district court denies a habeas claim on procedural grounds, the Court should issue a certificate of appealability only if the petitioner shows that (1) "jurists of reason would find it debatable whether the petition states a

valid claim of the denial of a constitutional right," and (2) "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

In this case, jurists of reason would not find the Court's procedural default conclusion debatable. Noble clearly failed to present his federal constitutional claim to the state courts, and has not presented any basis to excuse this failure. Accordingly, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For the reasons stated herein, Noble's petition for habeas corpus (R. 1) is DENIED. The Clerk of the Court is directed to enter a final judgment against petitioner. Additionally, the Court will not issue a certificate of appealability from this final judgment for the reasons stated above.

Entered: _____
**Judge Ruben Castillo**
**United States District Court**

**Dated:** December 16, 2010